IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YAHYI ABDUL SHIHEED, #455-399  *

    Plaintiff,  *

v.  *  Civil No. GLR-19-579

B. OPEL, *et al.*  *

    Defendant.  *

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DECLARATION**

I, Timothy Marchinke, being over eighteen (18) years of age and competent to testify, hereby declare on my personal knowledge as follows:

1. I am a Correctional Officer, CO II, employed by the Maryland Department of Public Safety and Correctional Services (DPSCS) and assigned to the North Branch Correctional Institution (NBCI) in Cumberland, MD.

2. I am familiar with the allegations made by Plaintiff in the above captioned case.

3. Plaintiff never complained of severe chest pains to me or requested that I take him to medical as alleged. I never walked away or "brushed" Plaintiff off as he claims. If any inmate, including Plaintiff, had ever complained of a medical emergency such as severe chest pains I would have definitely responded by going to the tier phone and calling the medical unit to report the medical complaint.

4. I responded to the pipe chase area near Plaintiff's cell after hearing a radio call that a cell was being flooded on that tier. When I arrived at that location I could see water flowing from Plaintiff's cell. Plaintiff never said anything about having chest pains during the time I was in the process of shutting the water off. At no time did I or any other officer

EXHIBIT 4                                                                                                           001

ask for an ink pen tube nor was one ever present as alleged. No pen tube was used to spray pepper spray through a hole in the cell wall from the pipe chase area. I did not detect the presence of pepper spray of either the citrus odor of pepper spray or its orange color while at that location and I definitely was not choking from pepper spray as alleged nor did I observe any other inmates housed there choking from pepper spray.

5. I appear in the video footage arriving first at the pipe chase access panel at 12:24:30, followed by Defendant Broadwater and Defendant Harding. A fourth officer arrives a minute later. Once I opened the panel to the pipe chase area to turn the water off to stop the tier flooding I noticed the handle for the water shutoff valve was missing and went to retrieve one. I return to the pipe chase area at 12:27:20 with the water shutoff handle. I can be seen in the video reaching into the pipe chase area with my right hand to turn the water off, and my left hand is holding the left door jamb for balance as I lean into the pipe chase area. The water turnoff valve is at about my chest level. I was not aware at the time of the incident that the drill holes in the C-55 sink could be accessed from the pipe chase area. The sink in cell C-55 is three feet tall and the drill holes in the sink panel are in the upper third of the sink. The level of the sink holes in cell C-55 relative to where I was standing at the pipe chase area would have been at about my mid-thigh level.

6. There are two shutoff valves in the pipe chase area, one shutoff valve that shuts the water off for the entire tier and another valve that shuts the water off for specific cells. When I appear in the video to be looking into cell C-56 at 12:27:50, I was looking at the sink in the cell to verify with that inmate if the water had actually been shut off.

7. Once the flooded tier matter was resolved I returned to my regular duties for the remainder of my shift.

EXHIBIT 4                                                                                                    002

8. I was not requested to provide a statement for a Use of Force investigation because no UOF investigation was necessary since no pepper spray or any other use of force occurred as alleged. I was not involved in any conspiracy or cover-up as alleged because no pepper spray incident occurred.

9. With one exception, the responses I provided to the IID investigator on March 8, 2019 as summarized in his IID report of my involvement in the incident are true and accurate. The IID report states that I arrived at the pipe chase access panel after Defendant Broadwater had opened up the pipe chase access panel. I actually arrived first and opened the access panel and then went to get a water valve handle.

I have read the above statements and hereby declare under the penalty of perjury that they are true and correct.

DATED: 0 / 14 /19

Timothy Marchinke CO II

EXHIBIT 4     003