IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YAHYI ABDUL SHIHEED,   *

    Plaintiff,   *

v.   *   Civil Action No. GLR-19-579

B. OPEL, et al.,[1]   *

    Defendants.   *

***

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Yahyi Abdul Shiheed's Motion to Amend Complaint (ECF No. 14) and Defendants Brandon Opel, Dean Rounds, Sr., Timothy Marchinke, Jenifer Harding, and Justin Broadwater's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 10).[2] The Motions are ripe for review, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant Shiheed's Motion to Amend and deny Defendants' dispositive motion, which it construes as a motion for summary judgment.

---

[1] The Court will direct the Clerk to amend the docket to reflect the correct spelling of Defendants' names. Accordingly, the Court will deny as moot Plaintiff Yahyi Abdul Shiheed Motion to Amend Complaint (ECF No. 16), which seeks to amend the names of Defendants Opel and Rounds.

[2] Also pending before the Court is Shiheed's Motion for Requested Order, in which Shiheed requests video footage from January 19, 2019 showing correctional officers escorting him to the medical unit. (ECF No. 18). Because the Court will deny Defendants' dispositive motion, Shiheed's Motion for Requested Order will be denied without prejudice.

# I. BACKGROUND[3]

Plaintiff Yahyi Abdul Shiheed is a self-represented Maryland prisoner confined at the North Branch Correctional Institution ("NBCI").

According to the Complaint, on January 19, 2019, at approximately 11:30 a.m., Shiheed began to experience severe chest pain. (Compl. Ex. 1 ["ARP"] at 1, ECF No. 1-1). As such, Shiheed asked Correctional Officer Timothy Marchinke to call for medical attention or take him to the medical unit. (Id.). Marchinke responded "OK" but did nothing. (Id.). When Shiheed once again asked for medical attention, Marchinke "kept walking and brushed [him] off." (Id.). Around noon, Shiheed attempted to flood the tier with water in order to get assistance. (Id.).

Marchinke, along with Correctional Officers Dean Rounds, Sr. and Jenifer Harding, responded by coming upstairs to turn off the water to Shiheed's cell. (Id.). At some point, Correctional Officers Broadwater and Opel responded to Shiheed's cell. (Broadwater Decl. ¶ 5, ECF No. 10-7; Opel Decl. ¶ 3, ECF No. 10-10). One or more of the Defendants then asked for a "flex" pen tube, went into the utility closet, put the tube through the hole for Shiheed's sink, and sprayed mace into Shiheed's cell, causing Shiheed to cough and choke. (ARP at 2). Defendants left the utility closet, commenting that they hoped Shiheed died. (Id.). At approximately 2:00 p.m., Rounds came to Shiheed's cell door and expressed

---

[3] Unless otherwise noted, the facts outlined here are set forth in Shiheed's Complaint. To the extent the Court discusses facts that Shiheed does not allege in his Complaint, they are uncontroverted and the Court views them in the light most favorable to the non-moving party. The Court will address additional facts when discussing applicable law.

surprise that Shiheed was still alive. (Id.). When Shiheed threatened to prosecute Rounds, Rounds stated, "next time he'll see that [Shiheed] die[s]." (Id.).

When the next shift of correctional officers came on duty around 3 p.m., Shiheed explained what happened to a correctional officer, who observed the mace and reported the incident to his supervisor. (Id.). Shiheed was then escorted to the "strip cage" where a correctional officer took Shiheed's statement and strip searched him. (Id.). Another correctional officer took photographs of Shiheed and his clothing, which had mace on it. (Id.). Shiheed was taken to the medical unit, where his vital signs were taken and he was provided a shower. (Id.). While there, Shiheed recorded a written statement about the incident. (Id.).

When Shiheed returned to his cell, the mace was still present and an emergency request was put in to have the cell cleaned. (Id.). Shiheed alleges that the correctional officers made no report of their use of mace and attempted to cover up their actions in violation of Division of Corrections procedures. (Id.).

As a result of Shiheed's allegations, the Intelligence and Investigative Division ("IID") of the Maryland Department of Public Safety and Correctional Services ("DPSCS") initiated an investigation into the January 19, 2019 incident. (Defs.' Mot. Dismiss Alt. Summ. J. ["Defs.' Mot.] Ex. 1 ["IID Report"], ECF No. 10-3). The IID investigator interviewed the Defendants, who each denied the use of pepper spray. (Id. at 5–7). The IID investigator also reviewed the video surveillance footage, which showed Defendants responding to Shiheed's cell but did not clearly show whether Defendants used pepper spray. (Id. at 6).

3

The IID investigator reviewed Shiheed's medical records from January 19, 2019, which revealed that Shiheed was taken to the medical unit due to his complaints of pepper spray exposure. (Id. at 26). Shiheed showed no signs of skin irritation and reported that he was not exposed to pepper spray on his face or skin; however, he had pepper spray residue and "a white powder substance" on his clothes. (Id. at 26). Shiheed was provided a shower and his clothes were washed. (Id. at 5, 26–27).

The IID investigator inspected photographs of the pipe chase area in the utility closet, which showed evidence of pepper spray residue. (Id. at 5, 36). The IID investigator also inspected the pipe chase area adjacent to Shiheed's cell and observed a small hole on the left side of the back of the sink, noting that he could only see the hole by getting into a crawling position under the pipes. (Id. at 6, 43–46). The IID investigator also reviewed photographs of Shiheed's cell and clothing and concluded there was evidence of pepper spray. (Id. at 29, 33–35, 37–38). However, the IID investigator was unable to determine how, when, or who administered the pepper spray. (Id. at 7).

The IID investigator interviewed Shiheed, who largely recounted the facts as alleged in his ARP complaint. (Id. at 5). The IID investigator also attempted to interview Walter Hall, an inmate housed one floor below and three cells down from Shiheed at the time of the incident, who had sent a letter to the Secretary of DPSCS indicating that Broadwater, Rounds, Marchinke, and Opel had deployed pepper spray into Shiheed's cell through a hole in the wall. (Id. at 5, 7, 22; see Defs.' Mot. Ex. 2 ["NBCI Documents"] ¶ 5, ECF No. 10-4). Hall refused to come out of his cell to be interviewed, indicated he knew nothing about the pepper spray incident, and appeared to the IID investigator to be mentally ill.

4

(IID Report at 7). Ultimately, the IID investigator found that there was insufficient evidence to confirm the events reported by Shiheed and the matter was closed. (Id.).

On February 22, 2019, Shiheed, proceeding pro se, filed an unverified Complaint against NBCI Correctional Officers Brandon Opel, Dean Rounds, Sr., Jenifer Harding, Timothy Marchinke, and Justin Broadwater under 42 U.S.C. § 1983. (ECF No. 1).

On June 24, 2019, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 10). On July 11, 2019, Shiheed filed an Opposition together with a verified memorandum in support and sworn declaration. (ECF Nos. 13, 13-1, 13-3). To date, the Court has no record that Defendants filed a Reply.

## II. DISCUSSION

### A. Amendments to Complaint

Before reaching the merits of Defendants' dispositive motion, the Court must first consider Shiheed's Motion to Amend Complaint, which seeks to add a claim of Eighth Amendment deliberate indifference against all Defendants. (ECF No. 14).

In general, a plaintiff may amend his complaint once as a matter of course within twenty-one days after service of the opposing party's motion to dismiss. Fed.R.Civ.P. 15(a)(1). The Court notified Shiheed of Defendants' pending dispositive motion by a Rule 12/56 Letter dated June 25, 2019. (See ECF No. 11). Although Shiheed's Motion to Amend was not received by the Court until July 22, 2019, the Motion itself is dated July 14, 2019. (See ECF No. 14). Because Shiheed's Motion to Amend bears a date within twenty-one

days of the date on the Court's Rule 12/56 Letter, the Court will permit Shiheed to amend his Complaint as a matter of course.[4]

Separately, on September 30, 2019, Shiheed filed a Supplemental Complaint without first seeking leave from the Court. (ECF No. 17). The Supplemental Complaint details new allegations of threats of harm and retaliation that are outside the scope of Shiheed's present Eighth Amendment claim. If Shiheed believes his civil rights were violated by the conduct alleged, he is free to file a new civil rights complaint detailing those allegations; however, for the purposes of this action, the Court must reject Shiheed's Supplemental Complaint.

**B. Dispositive Motion**

**1. Conversion**

Defendants' Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." Bosiger v. U.S. Airways, 510 F.3d 442, 450 (4th Cir. 2007). Pursuant

---

[4] Although an amended complaint generally moots any pending motions to dismiss, see Venable v. Pritzker, No. GLR–13–1867, 2014 WL 2452705, at *5 (D.Md. May 30, 2014), the Court will nonetheless consider Defendants' pending dispositive motion because it preemptively raised defenses to a deliberate indifference claim by Shiheed, (see Defs.' Mot. at 23–25).

to Rule 12(d), however, a court has the discretion to consider matters outside of the pleadings in conjunction with a Rule 12(b)(6) motion. If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." Id. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. Id. at 165–67. "When the extra-pleading material is comprehensive and will enable a rational determination of a summary judgment motion in accordance with the standard set forth in Rule 56, the district court is likely to accept it." Id. at 165. By contrast, when the extraneous material is "scanty, incomplete, or inconclusive, the district court probably will reject it." Id. at 165–66.

A court may not convert a motion to dismiss to one for summary judgment sua sponte unless it gives notice to the parties that it will do so. See Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998). In this case, pursuant to the dictates of Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court notified Shiheed of his right

7

to respond and advised that he may file affidavits, declarations, and exhibits along with his response to Defendants' Motion. (See ECF No. 11). While Shiheed filed a declaration along with his Opposition, he did not submit a Rule 56(d) affidavit expressing a need for discovery. Additionally, Defendants expressly captioned their Motion "in the alternative" for summary judgment and submitted matters outside the pleadings for the Court's consideration. In that circumstance, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." Laughlin, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); see Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp., 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); Fisher v. Md. Dept. of Pub. Safety & Corr. Servs., Civ. No. JFM–10–0206, 2010 WL 2732334, at *3 (D.Md. July 8, 2010). Accordingly, the Court will construe Defendants' Motion as one for summary judgment.

### 2. Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)).

8

Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)). Furthermore, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)).

Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." Id. Further, if the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

### 3. Analysis

Shiheed alleges that Defendants used excessive force against him by deploying pepper spray into his cell and that Defendants were deliberately indifferent to his medical needs by ignoring his complaints of chest pain and failing to promptly treat him for pepper spray exposure.[5] The Court addresses each claim in turn.

---

[5] Although Shiheed does not spell out these claims so clearly, the Court is mindful of its duty to construe pro se pleadings liberally and to hold them to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010).

### a. Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U. S. 1, 6–7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. Whitley v. Albers, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. Wilkins v. Gaddy, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. Id. at 38.

The use of pepper spray does not amount to "per se . . . cruel and unusual punishment," McCargo v. Mister, 462 F.Supp. 813, 818 (D.Md. 1978), and is permissible when used to control a recalcitrant inmate. Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996). Indeed, use of chemical agents is reasonable when an officer is attempting to maintain order and discipline in the institution. Santiago v. Walls, 599 F.3d 749, 757 (7th Cir. 2010) (determining that Eighth Amendment was not violated where pepper spray was used to break up inmate fight); Combs v. Wilkinson, 315 F.3d 548, 558 (6th Cir. 2002) (holding use of pepper spray during prison riot appropriate). However, use of pepper spray as a means of force may support a violation of the Eighth Amendment where prison

11

officials "use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." Iko v. Shreve, 535 F.3d 225, 240 (4th Cir. 2008) (quoting Williams, 77 F.3d at 763 (emphasis omitted)).

The focus of the analysis for a claim of excessive use of force, as noted, is on the subjective intent of the defendant; in other words, whether the defendant acted with a sufficiently culpable state of mind. See Iko, 535 F.3d at 238 (4th Cir. 2008) (denying qualified immunity to correctional officer who deployed chemical agent into inmate's cell after inmate complied with orders, did not react violently, and officer failed to take steps to ameliorate effects of chemical agent). A subjective intent to cause harm is supported where an officer uses more than a reasonable amount of a chemical agent to restore discipline. See, e.g., Furnace v. Sullivan, 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined in); Lawrence v. Bowersox, 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); DeSpain v. Uphoff, 264 F.3d 965, 978 (10th Cir. 2001) (same, where officer indiscriminately sprayed entire prison tier).

Under some circumstances, however, multiple applications of a chemical agents have been found reasonable where an inmate repeatedly ignores orders issued by a correctional officer. See Williams, 77 F.3d at 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); Jackson v. Morgan, 19 F.App'x 97, 102 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from

12

his cell); Norris v. Detrick, 918 F.Supp. 977, 984 (N.D.W.Va. 1996) (upholding use of two blasts of pepper spray when inmate refused to return to his cell during lockdown).

Here, Shiheed presents a colorable claim for excessive force. Although Shiheed's initial Complaint was unverified, he has since filed statements under penalty of perjury indicating that Defendants deployed pepper spray into his cell without warning and after the water to his cell had been turned off. (See Pl.'s Opp'n Defs.' Mot. ["Pl.'s Opp'n"], ECF No. 13-1; Shiheed Decl. ¶¶ 1–6, ECF No. 13-3). In addition to Shiheed's sworn statements, the record contains some objective indicia that Defendants deployed pepper spray, including the pepper spray stains on Shiheed's clothing and in his closet and cell. Moreover, inmate Hall sent a letter shortly after the incident corroborating Shiheed's story.

Defendants do not assert that deploying pepper spray into Shiheed's cell was reasonable under the circumstances; rather, they deny doing so altogether. (Marchinke Decl. ¶ 4, 8, ECF No. 10-6; Broadwater Decl. ¶¶ 6, 8; Harding Decl. ¶¶ 4, 6, ECF No. 10-8; Rounds Decl. ¶¶ 4, 9, ECF No. 10-9; Opel Decl. ¶¶ 4, 9). Defendants first point to the video footage, which they contend "reveals them to be simply carrying out the otherwise mundane task of responding to a flooded tier by shutting off the water." (Defs.' Mot. at 18).[6] Defendants also offer alternative explanations for the presence of pepper spray on Shiheed's clothing and cell, suggesting that those stains could have been made from a prior incident. Specifically, Defendants provide evidence that while inmates are not "permitted to keep clothing that [has] just been pepper sprayed," explaining that "it is possible that an

---

[6] The Court has reviewed the surveillance video and finds it inconclusive. (Defs.' Mot. Ex. 9 ["Video Footage"], ECF No. 10-11).

inmate could be re-issued laundered clothing items that still had orange pepper spray stains on them form a previous incident."[7] (White Decl. ¶ 6, ECF No. 10-4). Additionally, Defendants contend that Shiheed's account is refuted by evidence in the record, such as Defendants' statements to the IID investigator, the fact that Shiheed's medical record does not reflect any complaints of pepper spray exposure on his skin or in his eyes, and that inmate Hall had no knowledge of the letter when he was interviewed by the IID investigator. Moreover, Defendants offer evidence that no inmates housed in the cells adjacent to Shiheed's at the time of the incident filed any ARP complaints regarding pepper spray exposure. (See White Decl. ¶ 5).

In cases where, as here, Defendants offer no justification for the alleged application of force or simply deny there was an application of force, there exists a genuine dispute of material fact regarding whether the force was applied maliciously. Resolving this question requires credibility determinations, which are not appropriate on a motion for summary judgment. See Anderson, 477 U.S. at 255. Accordingly, Defendants are not entitled to summary judgment on Shiheed's excessive force claim.

    b.    **Deliberate Indifference**

To prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Anderson, 877 F.3d at 543. A prisoner plaintiff must allege and provide

---

[7] For his part, Shiheed disputes that it is possible for an inmate to possess clothing items that have been pepper sprayed. (Pl.'s Opp'n at 8).

some evidence he was suffering from a serious medical need and that defendants were aware of his need for medical attention but failed to either provide it or ensure it was available. See Farmer v. Brennan, 511 U.S. 825, 834–37 (1994); see also Heyer v. U.S. Bureau of Prisons, 849 F.3d 202, 209–10 (4th Cir. 2017); King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016); Iko, 535 F.3d at 241. Further, "[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Abraham v. McDonald, 493 F.App'x 465, 466 (4th Cir. 2012).

Shiheed's claim that Defendants delayed treating him for exposure to pepper spray is actionable under the Eighth Amendment. Shiheed states under penalty of perjury that Defendants left him alone in his cell after deploying pepper spray and that he did not receive medical attention until hours later when he reported the incident to correctional officers on the next shift. As discussed above, Defendants deny deploying pepper spray in the first instance, and thus do not offer an explanation for their failure to provide Shiheed medical attention. In light of these contradictions, there exists a genuine dispute of material fact regarding whether Shiheed was suffering from a serious medical condition and whether Defendants were deliberately indifferent to that condition. Because the evidence presented to the Court requires credibility determinations that are inappropriate at this stage of the litigation, Defendants are not entitled to summary judgment on this claim.

Similarly, Shiheed's claim that Defendants were deliberately indifferent to his complaints of chest pain survives Defendants' Motion. Shiheed avers that he flooded his cell after Defendants ignored his initial complaints of chest pain. By contrast, Defendants

categorically deny that Shiheed alerted them of his condition, (Marchinke Decl. ¶ 3; Broadwater Decl. ¶ 3; Harding Decl. ¶ 3; Rounds Decl. ¶ 6; Opel Decl. ¶ 3), and note that Shiheed did not report any chest pain on the day of the incident or in his sick call slips before and after the incident, (IID Report at 26; Defs.' Mot. Ex. 3 ["Medical Records"] at 2–7, ECF No. 10-5). Once again, there exists a genuine dispute of material fact regarding whether Shiheed was suffering from a serious medical condition and whether Defendants were deliberately indifferent to that condition. As such, summary judgment is not warranted.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Shiheed's Motion to Amend Complaint (ECF No. 14) and deny Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 10). A separate Order follows.

Entered this 13th day of March, 2020.

_____/s/_____
George L. Russell, III
United States District Judge